To the day calendar we'll hear Marilyn Miller against City of New York. Alright, Mr. Zellman, you're up. May it please the court, counsel, My name is Dave Zellman. I'm the attorney for the plaintiff Marilyn Miller, appellant. I was also attorney below. The complainant in this case, Ms. Dina Allen, did not provide the police with probable cause to arrest. Her basic statement to police was that she had engaged my client, an admitted licensed real estate broker, which defendants admitted in their 56.1, to try to locate her an apartment. That several apartments were shown to this woman that ultimately, while my client was showing Ms. Allen's boyfriend an apartment, pictures were sent to Ms. Allen. She loved the apartment. My client, in her routine practice, told Ms. Allen, okay, provide me with one month's rent. Let's go to the meeting with the landlord and let's negotiate the terms of the lease. Prior to the execution of that lease, Ms. Allen and the landlord's representative decided that Ms. Miller's services were no longer needed. That Ms. Allen called my client and said, I don't need you here anymore. I want my money back, or words to that effect. The meeting, as far as my client was concerned, was not held. Then the complaint comes to the police that my client is somehow stealing Ms. Allen's money. It is absurd to think, for the district court to think, that this somehow constituted probable cause to arrest. At best, and what my client even insisted to the police as they came to her apartment, was that this is a civil matter. This was a dispute about who had a better claim to the funds. Defendants claim that, well, since there's now proof that Ms. Allen did not rent the apartment, that the monies were owing back to Ms. Allen, and I submit to the court, that even if it were shown that Ms. Allen didn't rent the apartment, which was not known to the officers at the time of the arrest, because the officer admittedly never contacted anybody except Ms. Allen and my client, that still would not constitute probable cause. It would, again, simply constitute a debt, possibly a debt. Just as the same way as an overdue library book. The city is arguing that, well, we don't have to show intent. We just have to show the wrongful withholding of property that doesn't belong to you. Just as they would not have to show intent with an overdue library book if somebody went to the library, took out a book, didn't return it on time. Is that a crime? Obviously not. In sum, it is true that in New York there is no duty to investigate. However, that only applies once probable cause is established. Why wouldn't the officer at least get qualified immunity because he had a reasonable belief that he had probable cause? Ms. Detective Yee was the main defendant in the case investigating. And she is not entitled to qualified immunity due to two reasons. One, there was clearly no basis for probable cause in this case. And it's been clearly established by this circuit and the Supreme Court that in order to effectuate an arrest, probable cause must be established. Well, that's always said in the context of motions to suppress, not in the context of suits against the police officer for damages. Qualified immunity requires a clearly established law. And what we're arguing is that Detective Yee violated clearly established law because there was clearly no probable cause to arrest in the case. Another part of qualified immunity, a reasonable belief that the officer was acting lawfully? Yes. That's absolutely true. Could this officer have a reasonable belief that she was acting lawfully? You really could say that about any particular officer. But what I argued in my papers is that because Detective Yee brought the plaintiff to the precinct, sat her down and said, if you bring in money, we will vitiate this arrest, we won't process your arrest, that that clearly demonstrates her lack of reasonableness in what she was doing. And that qualified immunity would not apply. And I think that in order for the defendants to be able to establish qualified immunity, we'd have to go to trial, there'd have to be stipulated facts to the jury about exactly what the parameters of the information known to Detective Yee at the time of the arrest. I would also point out in their summary judgment motion, they barely touched upon qualified immunity in arguing. And the judge itself below said there is qualified immunity without explaining any basis for it. So it's a defense that you could use in any case on any ground. And it simply is, I think, subject to interpretation. And I think that the jury below would have to decide what specifically was known to the officer in order to provide her with qualified immunity. What we're arguing is that she had almost no information on this case. And she basically admits that at her deposition. She didn't know if she spoke to Ms. Allen or my client first. She did not know Ms. Allen alleged broadly that my client had no authority to show the apartment. I don't believe that Ms. Yee knew that my client was a licensed real estate broker or cared. I think all these issues could go to qualified immunity. And I think that it's easy for me to say or for you to say the opposite that a reasonable officer could take this belief or not. But I think that's really subject to what the jury would believe the facts are. Mr. Zellman, did the officer have any reason to doubt the veracity of the complainant's account? We're not arguing that. We're not arguing that. What we're arguing is that Ms. Dina Allen did not provide probable cause. The one thing that I think you could suggest that is that Ms. Allen, according to the complaint, according to the paperwork said that my client was in cahoots with the owner of the property. Now, what exactly does that mean in the context of a licensed real estate broker who's showing apartments to her client and the owner of the property, that they're in cahoots? Well, my client, I don't know what that meant. Detective Yee did not explore what she meant by that. But it's clearly put forward in the paperwork. She also said my client had no authority to show the apartment, which again is ambiguous. What does it mean? Now, I can't sit here and say that I think Ms. Dina Allen was a liar. But I think that what she did provide to the police was not enough substance to arrest a licensed real estate broker for doing her job. Thanks very much, Mr. Zellman. You've reserved some time. Mr. Lee. Good afternoon, Your Honors. Eric Lee for the Appellees. The District Court correctly granted summary judgment to the defendants. And I want to focus on the issue that the appellant focused, which is probable cause for arrest. I think it's critical, Your Honors, that the appellant conceded here at oral argument that they are not arguing that there was any reason to doubt Ms. Allen's account. And as the panel well knows, under this circuit's law, probable cause exists when police are advised of a crime by a putative victim. Ms. Allen, in this case, was the putative victim. She told two different police officers a very, very similar account, firsthand account. The first one, she told Detective Barnett that she had engaged Ms. Miller to find her an apartment, that she found out that Ms. Miller did not have the authority to do so. She asked for the money to be returned, and Ms. Miller did not return the money. The second time she spoke to Ms. Yee, and as detailed in the District Court's opinion, Ms. Allen told Detective Yee that they had agreed that Miller would get $1,700 in exchange for her help for renting an apartment. Allen directly deposited that amount into Ms. Miller's bank account, and when Allen asked for the money back because she did not rent the apartment, Miller refused to do so. That establishes the basic elements for larceny in this case. And I haven't heard anything that the appellant has said other than that critical concession that changes in any way the analysis here. Officers were entitled to credit Ms. Allen's accounts, and they were not required to investigate any further whether or not, especially when there were no reasons to doubt Ms. Allen's account. So unless there are any further questions, we ask this Court to affirm the District Court's opinion. What about the time held in detention and telling her, you get out the amount that you pay, or words to that effect? So in terms of the pre-arraignment detention issue, this Court should still affirm, because what happened was Officer Yee went to Miller's apartment, residence, and said, please come with me. She agreed. There was no handcuffs. She was put in a marked car. They took her to the precinct. And according to Ms. Miller herself, she waited there for a couple hours because presumably they were doing something else. So there was no contact with her. She was just sitting there. And when they finally did speak to her about this issue, Detective Yee, and I believe one other detective, sat down and interviewed her. And in that interview, Yee said, there's a way to resolve this matter without processing you, and that we would void the arrest. And that option was, if you simply hand over the $1,700 in dispute, we would void the arrest and there's no need to stay any further. So it isn't an act of coercion. In fact, as the District Court analyzed, it's viewed objectively, it was a situation where the officer's detention of Miller was without Ms. Allen pressing charges. Because even if she had refused to hand over the money, she would have been processed. She would have to wait for an arraignment. So it wasn't a situation where she would have automatically gone free. And critically, Officer Yee testified in her deposition that at every step, she believed that she had probable cause to arrest. She simply did not want to go through with the process because she believed another alternative could resolve the matter. If it's a good arrest, but the officer has the right, in effect, to nolly the prosecution and settle the case, is that the idea? I don't think I would put it that way. I think it was a recognition that she had understood from Ms. Allen that if the money was returned to her, she would not press charges and there would be no need for her to go through the formal process of arrest. And again, in this case, Miller agreed. Not that the police would drop the case. I think there was an understanding that she would void the arrest, which is what she, Officer Yee, would. Yes, which is what she did. I don't think she was playing the role of the prosecution, though. She's letting the person out of jail, right? I understand. That's your argument. She had probable cause, and that starts a criminal case. And now she's saying, but I'll end this criminal case if you pay. Well, she would not be process arraigned and have to go through the process if she simply settled the matter with the police. I just want to clarify a few misstatements by counsel. My client was handcuffed. My client did not agree to go to the precinct. My client testified that she was detained inside the cell. My client testified that she told the officer, I will not bring money to this precinct. I refused to do so. Detective Yee said, okay, you can sit here and you can wait. And I asked her at deposition, how long did you wait? This is page 77 of her deposition. She said, a long time. The idea here is, and I think Your Honor picked up on this very clearly, is that this officer, Detective Yee, totally usurped her role as an officer by not just collecting my client and putting her in front of a judge, but by being judge, jury, and setting the damages in the case. Meaning, how much money to bring to the precinct. This type of case is extremely dangerous because it allows officers the belief that they can now bring people to custody and demand money from them at the precinct in any amount that they choose. The irony is, if we were to agree with you, the next time an officer would get the message, I better not release her. I better go ahead with the case. That's exactly what this officer should have done. Really? You would have rather had the prosecution and the trial and maybe the conviction? I guarantee you, I can almost guarantee you, based on my experience, that this would not have been a prosecution. This would have been a declined prosecute. Your client may not be thrilled with your guarantee. I have a lot of experience with this. No prosecutor would have prosecuted this case. Officers have a duty not to demand money from arrestees. This creates a dangerous precedent all over this state. Thank you, Mr. Zell. We'll reserve the seat.